# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| RINO TENORIO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:20-cv-00517-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| STATE OF NEVADA, DEPARTMENT OF | ) | |
| TAXATION, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant State of Nevada, Department of Taxation's ("Defendant's") Motion to Dismiss, (ECF No. 6). Plaintiff Rino Tenorio ("Plaintiff") filed a Response, (ECF No. 10), and Defendant filed a Reply, (ECF No. 13).

Also pending before the Court is Plaintiff's Motion to Remand, (ECF No. 11). Defendant filed a Response, (ECF No. 17), and Plaintiff filed a Reply, (ECF No. 19).

Also pending before the Court is Defendant's Motion to Strike, (ECF No. 21), regarding Plaintiff's Request for Judicial Notice, (ECF No. 14). Plaintiff filed a Response, (ECF No. 22), and Defendant filed a Reply, (ECF No. 23).

Also pending before the Court is Plaintiff's Objection/Appeal, (ECF No. 25), of the Magistrate Judge's Order to Stay Discovery, (ECF No. 24). Defendant filed a Response, (ECF No. 27), and Plaintiff did not file a reply.[1]

Also pending before the Court is Plaintiff's Motion for Leave to File Supplement, (ECF No. 30). Defendant filed a Response, (ECF No. 31), and Plaintiff filed a Reply, (ECF No. 32).

---

[1] The Magistrate Judge's Order stayed discovery until resolution of the Motion to Dismiss and Motion to Remand. (*See* Order Stay Discovery 3:20–21.) Given this Order's resolution of the Motions, the Objection is now moot.

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** the Motion to Dismiss, **DENIES** the Motion to Remand and Motion to Strike, and **DENIES as moot** the Objection/Appeal and Motion for Leave to File Supplement.

## I.     BACKGROUND

This case arises from Plaintiff's allegations that he suffered discrimination on the basis of his sexual orientation while an employee of the State of Nevada's Department of Taxation. (*See generally* Compl., Ex. 1 to Pet. Removal, ECF No. 1).  Plaintiff, a gay man, works for the Department as an auditor II. (Compl. ¶ 5).  During his employment with Defendant, Plaintiff asserts that he encountered a "hostile work environment that included severe, pervasive and unwelcomed sexual harassment against [Plaintiff] because of his sexual orientation[.]" (*Id.* ¶ 6). Plaintiff details two specific instances of discrimination he allegedly suffered.  First, on or about December 12–17, Plaintiff's supervisor, Karalyn Cronkhite, with Andrea Fountain, a management analyst II, "superimposed/photo shopped [Plaintiff's] face in the place of a women's [sic] face who is wearing a Mexican style dress and shared this photo making fun of [Plaintiff's] sexual orientation with other employees in the Department[.]" (*Id* ¶ 8) (internal citation omitted).  Second, on or about January 8, 2019, Plaintiff alleges that Chris Jacobson, another Department employee, emboldened by Cronkhite's behavior, "further sexually harass[ed] [Plaintiff] based on [Plaintiff's] sexual orientation when he placed chocolate kisses candy on [Plaintiff's] desk stating, 'ok you can kiss me now[.]'" (*Id.* ¶ 9).  Additionally, Plaintiff generally alleges that Cronkhite "fostered an environment of sexual harassment/hostile work environment within the Division based on [Plaintiff's] sexual orientation and allowed, directly encouraged and participated in, with laughter, Brian Chittenden's (marijuana inspector I) [and Jacobson's] sexual harassment of [Plaintiff] about his sexual orientation, which included unwanted and uninvited discussions of gay sex, gay jokes, obscene gay gestures and gay sexual sounds[.]" (*Id.* ¶ 7).

Plaintiff alleges that he complained about the hostility to both Cronkhite and the human resources department on or about December 17, 2018. (*Id.* ¶ 8).  Plaintiff alleges that Melanie Young, the Director of Taxation, retaliated against Plaintiff by purportedly initiating baseless allegations of workplace misconduct against him. (*Id.* ¶ 10).  Plaintiff contends that he has been placed on "a severe and prolonged administrative leave," and investigations of his complaints have been deliberately stalled and left incomplete for over a year. (*Id.*).  Plaintiff also contends that he has been excluded from official office functions including having access to training on new auditing software. (*Id.*).  Plaintiff further alleges that on October 11, 2019, Tyler Klimas, Deputy Director, "approached [Plaintiff] at work and misled him by stating that he would accompany him to the Human Resources Department under the guise that Human Resources wanted to speak with him, while all along knowing that he was escorting [Plaintiff] to be interrogated by Sgt. Peterson in the Department of Public Safety," which Plaintiff also alleges was retaliatory. (*Id.*).

In October of 2019, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission. (*Id.* ¶ 6); (*see also* Charge of Discrimination, Ex. 1 to Compl., ECF No. 1). The Charge alleges, "on or about December 17, 2018, I was subjected to a harassing and offensive email where my supervisor, Karalin [sic] Cronkhite, essentially mocked my sexual orientation and embarrassed me in front of other members of management and my peers." (*Id.*). The Charge further describes that Defendant's employees retaliated against Plaintiff by initiating investigations against Plaintiff for violations of workplace policies shortly after he filed a complaint with Defendant's internal equal employment opportunity office. (*Id.*).  The Equal Employment Opportunity Commission ("EEOC") declined to bring suit and provided Plaintiff his right to sue letter on October 31, 2019. (*Id.*); (*see also* Right to Sue Letter, Ex. 2 to Compl., ECF No. 6-1).  Plaintiff now asserts claims against Defendant for violations of his civil rights and intentional infliction of emotional distress.

## II.    LEGAL STANDARD

### A.    Motion to Remand

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and by statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  Generally, district courts have subject matter jurisdiction over civil actions in which: (1) the claims arise under federal law; or (2) where no plaintiff is a citizen of the same state as a defendant and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

A civil action brought in state court may be removed to a federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a).  The defendant asserting the removal must prove it is proper, and there is a strong presumption against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (quoting *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

### B.    Motion to Strike

Although Rule 12(f) of the Federal Rules of Civil Procedure provide authority only to strike pleadings or content therein, a district court has the inherent power to strike a party's submissions other than pleadings. *See, e.g.*, *Metzger v. Hussman*, 682 F. Supp. 1109, 1110 (D. Nev. 1988) (striking plaintiff's opposition because it was filed after the date set for responding to motions); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (recognizing that federal courts have "certain implied powers" that are "governed not by rule or statute but by the control necessarily invested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").  This alternative basis for striking improper filings derives from the district court's "inherent power over the administration of its business.

1    Specifically, the district court has inherent authority to regulate the conduct of attorneys who

2    appear before it [and] to promulgate and enforce rules for the management of litigation . . . ."

3    *Spurlock v. F.B.I.*, 69 F.3d 1010, 1016 (9th Cir. 1995) (citations omitted).

4         **C.    Motion to Dismiss**

5         Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

6    that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp.*

7    *Comm'n*, 720 F.3d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule

8    12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not

9    give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.

10   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the

11   complaint is sufficient to state a claim, the Court will take all material allegations as true and

12   construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792

13   F.2d 896, 898 (9th Cir. 1986).

14        The Court, however, is not required to accept as true allegations that are merely

15   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

16   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

17   with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a

18   violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

19   *Twombly*, 550 U.S. at 555).

20        "Generally, a district court may not consider any material beyond the pleadings in ruling

21   on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the

22   complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard*

23   *Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly,

24   "documents whose contents are alleged in a complaint and whose authenticity no party

25   questions, but which are not physically attached to the pleading, may be considered in ruling on

a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgement. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgement. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

The Court first addresses its subject matter jurisdiction before turning to the Motion to Strike and the Motion to Dismiss.

### A.   Motion to Remand

Plaintiff argues that this Court lacks jurisdiction over the case because Defendant's removal, premised upon federal question jurisdiction, derives from a not-yet-recognized Title VII theory of sexual orientation discrimination. (Mot. Remand 2:11–18, ECF No. 11) ("there is no Ninth Circuit Court case which specifically holds that Title VII applies to claims of discrimination based solely on sexual orientation."). To the extent Plaintiff's position was ever viable, the legal landscape has changed dramatically since Plaintiff filed his Motion to Remand.

In *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020), the Supreme Court held that Title VII's prohibition on sex discrimination extends to discrimination based upon one's sexual orientation. The Court explained that such discrimination is necessarily sex discrimination within the meaning of the statute because "[a]n employer who fires an individual for being homosexual . . . fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids." *Bostock*, 140 S. Ct. at 1737. Plaintiff's Complaint unmistakably raises a federal claim, and the Court therefore denies the Motion to Remand.[2]

**B.    Motion to Strike**

On April 13, 2020, Plaintiff filed a Request for Judicial Notice, (ECF No. 14), regarding the Motion to Dismiss. Plaintiff asks that the Court take judicial notice of the Nevada Equal Rights Commission and U.S. Equal Opportunity Commission websites' explanations of the time in which a plaintiff may file an employment discrimination complaint. (*See* Request Judicial Notice, ECF No. 14). Defendant moves to strike the request, arguing that it is an attempt to raise a new argument after the conclusion of the briefing on the Motion to Dismiss. (*See* Mot. Strike 5:1–6:18). Defendant proceeds from a flawed premise because the Request neither contains substantive discussion of Plaintiff's claims nor new argument. Rather, it merely asks the Court to take notice of publicly available government websites that summarize existing law. The Court therefore denies the Motion to Strike.

**C.    Motion to Dismiss**

Defendant argues that the Court should dismiss the Complaint because Plaintiff has failed to adequately allege claims to relief. (*See* MTD, ECF No. 6). With respect to Plaintiff's

---

[2] Plaintiff requests leave to file a supplement to the Motion to Remand in light of *Bostock*. (*See* Mot. Supp., ECF No. 30). However, the Court finds that a supplement would have no bearing on its subject matter jurisdiction analysis. To the extent the Motion for Leave to File Supplement requests to modify the Motion to Dismiss briefing, the Court finds a supplement unnecessary as the Court looks to the sufficiency of the allegations in the Complaint to resolve the Motion to Dismiss, and the allegations would be unaffected by further briefing.

Title VII claim, Defendant alleges that the Court lacks jurisdiction because Plaintiff has not timely exhausted his administrative remedies. (*Id.* 4:6–6:5).[3]  Defendant argues that, even if the Court reaches the merits of the Title VII claim, Plaintiff fails to plead sufficient facts to plausibly allege either a hostile work environment or discrimination claim. (*Id.* 6:6–8:15). Regarding Plaintiff's intentional infliction of emotional distress claim ("IIED"), Defendant argues that Plaintiff has neither alleged extreme and outrageous conduct nor compensable damages. (*Id.* 8:16–10:2).  The Court's below discussion begins with Plaintiff's Title VII claim.

   i. <u>Title VII</u>

    1. *Exhaustion of Administrative Remedies*

   Defendant argues that Plaintiff did not timely file an administrative complaint regarding the email incident or for other individuals making other unidentified "gay jokes" because Plaintiff filed the Charge of Discrimination on October 25, 2019, when the last day to do so was October 13, 2019. (MTD 4:23–5:5).  Defendant further argues that Plaintiff never filed a timely administrative complaint regarding the chocolate kiss incident. (*Id.* 5:6–20).  Given Plaintiff's alleged failure to file a complaint regarding the chocolate kiss incident, Defendant alleges that the allegation cannot support a hostile work environment claim. (*Id.* 5:21–6:5).

   A district court has jurisdiction over a Title VII claim only after a plaintiff exhausts his administrative remedies. *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995).  In order to exhaust administrative remedies, the complainant must "file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)).  A plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination. *See* 42 U.S.C. § 2000e-5(e)(1) (emphasis added).  However, the limitations period is extended to 300 days if the

---

[3] The Court notes that Plaintiff raises corollary claims under NRS 613.310, *et seq.*  In this Order, the Court collectively refers to the claims as the Title VII claim because the federal and state claims have substantially the same exhaustion requirements and substantive elements. *Cf. Pope v. Motel 6*, 114 P.3d 277, 280–81 (Nev. 2006).

plaintiff initiates proceedings with a "[s]tate or local agency with authority to grant or seek relief from such practice." *Id.*  "If a plaintiff does not file a timely administrative charge, or if his complaint alleges wrongdoing that falls outside of the charging document or the EEOC's investigation, then the plaintiff failed to exhaust his administrative remedies." *Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1169 (D. Nev. 2016).

The Complaint alleges two discrete instances of harassment based upon Plaintiff's sexual orientation.  First, on or about December 12–17, 2018, Plaintiff contends that Karalyn Cronkhite and Andrea Fountain superimposed Plaintiff's face on a photo of a woman wearing a dress and shared the photo with other employees while making fun of Plaintiff's sexual orientation. (*See* Compl. ¶¶ 6, 8, Ex. 1 to Pet. Removal, ECF No. 1).  Second, on or about January 8, 2019, Plaintiff alleges that Chris Jacobson placed chocolate kisses on Plaintiff's desk, telling Plaintiff "you can kiss me[.]" (*See Id.* ¶¶ 6, 9).  Additionally, Plaintiff generally alleges he has been victim to "unwanted and uninvited discussions of gay sex, gay jokes, obscene gay gestures and gay sexual sounds[.]" (*Id.* ¶ 7).  After complaining about the alleged harassment to human resources, Plaintiff claims he has since been subjected to unfounded retaliatory investigations into his alleged workplace misconduct. (*Id.* ¶ 10).

Plaintiff initiated the administrative process on October 11, 2019 by completing an online intake questionnaire with the Nevada Equal Rights Commission ("NERC"), two days before the critical date for the email incident. (*See* FOIA Response at 10, Ex. 2 to Pl.'s MTD Resp, ECF No. 10-2) (noting a "Submission (Initial Inquiry) Date of 10/11/2019).  Plaintiff then filed his Charge of Discrimination with NERC on October 16, 2019. (*See* Charge of Discrimination, Ex. 1 to Compl., ECF No. 1).  The Charge alleges, "on or about December 17, 2018, I was subjected to a harassing and offensive email where my supervisor, Karalin [sic] Cronkhite, essentially mocked my sexual orientation and embarrassed me in front of other members of management and my peers." (*Id.*).  The Charge further alleges that Defendant's

employees retaliated against Plaintiff shortly after he filed a complaint with Defendant's internal equal employment opportunity office by initiating investigations against Plaintiff for violations of workplace policies. (*Id.*).

With respect to the email incident and the allegedly retaliatory investigations, the Court finds Plaintiff's administrative charge timely. Plaintiff is deemed to have filed his Charge of Discrimination on the date he submitted his initial online intake inquiry questionnaire. *See Casavantes v. Cal. State Univ., Sacramento*, 732 F.2d 1441, 1443 (9th Cir. 1984) (permitting plaintiff to exhaust Title VII claims by completing a pre-complaint questionnaire within the statutory limitations period for filing a charge and supplementing the complaint with a sworn charge after the statute of limitations had run). In Nevada, a plaintiff may timely exhaust his administrative remedies under Title VII by initiating administrative proceedings with NERC within 300 days of the claimed discrimination because NERC has authority to grant relief from unlawful employment practices. *See Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) ("As Nevada is a deferral state and Laquaglia first instituted proceedings with its antidiscrimination agency, the district court wrongly concluded that her filing deadline was only 180 days."); 42 U.S.C. § 2000e-5(e)(1); *see also* Nevada Department of Employment, Training and Rehabilitation, Nevada Equal Rights Commission, https://detr.nv.gov/Page/Complaint_Process (last accessed Jan. 27, 2021) ("The NERC has a work-sharing agreement with the EEOC. Where both NERC and the EEOC have jurisdiction, you can file a complaint with either agency, and the agency where you file first will investigate.").[4] Therefore, as Plaintiff initiated administrative proceedings within 300 days of the email incident and Defendant's retaliation, Plaintiff properly exhausted his administrative remedies regarding the actions.

---

[4] The existence of the work sharing agreement is a matter of public record for which the Court may take judicial notice. *See* Fed. R. Evid. 201; (*see also* Request Judicial Notice, ECF No. 14).

However, Plaintiff has not exhausted his administrative remedies regarding the chocolate kiss incident.  To the extent Plaintiff alleges that the incident is actionable as a discrete act of discrimination, the claim is time barred because it is not raised in the Administrative Charge. *See AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); (*See* Charge of Discrimination, Ex. 1 to Compl., ECF No. 1) (referencing only the email incident and retaliatory investigations).  However, Plaintiff may use the incident to support a hostile work environment claim so long as it is an example of a single "unlawful employment practice" that has been timely raised in the Charge of Discrimination. *Id.* at 115, 122 ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.").[5]

## 2.  *Hostile Work Environment*

Defendant contends that the email and chocolate kiss incidents are insufficient to demonstrate the existence of a hostile work environment even if the Court acknowledges Plaintiff's other allegedly indefinite claims of discrimination. (MTD 7:1–12).  To the extent additional allegations could support a claim, Defendant argues that Plaintiff's failure to allege details regarding the nature of the conduct demonstrates their legal insufficiency. (*Id.* 7:13–17).  Plaintiff, extensively employing block quotations rather than analysis of his underlying allegations, asserts that the Complaint adequately alleges facts in support of his hostile work environment claim. (Pl.'s MTD Resp. 10:11–16:17, ECF No. 10).  Nevertheless, the Court finds that Plaintiff's Complaint plausibly alleges a hostile work environment claim.

---

[5] Regarding the hostile work environment theory, given that the parties have not briefed the nexus between the allegations raised in the Administrative Charge and those of the Complaint, this Order does not affirmatively conclude that the allegations encompass the same unlawful employment practice or practices and leaves the issue for summary judgment.

"Hostile environment" harassment refers to situations where employees work in offensive or abusive environments. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, SFV v. Vinson*, 477 U.S. 57, 65 (1986) (citation omitted). A hostile environment sexual harassment claim has three elements: (1) the plaintiff must show "he or she was subjected to sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison*, 924 F.2d at 875–76 (citation omitted).

Whether an environment is "hostile" or "abusive" is a matter that "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficiently severe or pervasive to change the conditions of employment and create a Title VII claim. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001). However, the Ninth Circuit has recognized that what may appear to be "innocent or only mildly offensive to one who is not a member of the targeted group" may "in reality be intolerably abusive or threatening when understood from the perspective of a plaintiff who is a member of the targeted group." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004).

The Court finds that the Complaint adequately alleges the existence of a hostile work environment.  First, although Plaintiff has not described every instance of harassment he suffered in novelistic detail, Plaintiff's allegation that he endured "unwanted and uninvited discussions of gay sex, gay jokes, obscene gay gestures, and gay sexual sounds" is a plausible factual allegation and not merely a legal conclusion. (Compl. ¶ 7).  Consistent with the allegation, Plaintiff also describes two discrete events of harassment he suffered—the chocolate kiss incident and the email incident. (*Id.* ¶¶ 8–9).   After reporting his concerns to human resources, Plaintiff alleges he suffered retaliation—including being put on administrative leave for over a year, subject to baseless workplace misconduct investigations, and excluded from training on new software necessary for his job—based on reporting the alleged misconduct, which also demonstrates actionable hostility. (*Id.* ¶ 10); *see also Ray v. Henderson*, 217 F.3d 1234, 1244–45 (9th Cir. 2000) (explaining that alleged retaliation for engaging in protected activity can support a hostile work environment claim).  The allegations are sufficient to show that Plaintiff suffered more than "sporadic use of abusive language, gender-related jokes, and occasional teasing" that is permissible under Title VII. *Cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Plaintiff's allegations demonstrate that his coworkers subjected him to crude behavior and humiliation that no employee should be expected to tolerate, and the alleged retaliation against his attempts to quell the harassment has purportedly prevented him from doing his job at all.

### 3.  *Causal Link to Retaliation*

Defendant argues that Plaintiff has not adequately alleged that his workplace complaints caused Defendant's retaliation because the alleged retaliatory event—leading Plaintiff into a coercive interrogation under the guise of meeting with human resources—occurred more than ten months after Plaintiff's human resources report. (MTD 7:26–8:9).  Plaintiff responds that he has alleged a plausible causal link because the Complaint alleges that Defendant began to

retaliate against him by initiating baseless internal investigations against Plaintiff within forty-five days of reporting employees' harassment. (Pl.'s MTD Resp. 17:10–10:20).

Title VII prohibits an employer from retaliating against an employee who opposes unlawful employment acts. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).  To establish a prima facie case for retaliation under Title VII, an employee must show (1) that he engaged in a protected activity, (2) he subsequently experienced an adverse employment action, and (3) a causal link exists between the two. *Id.*  "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Id.*

Plaintiff has adequately alleged a causal link between his protected conduct and Defendant's retaliation.  Defendant's reliance on the October 11, 2019 date in the Complaint is a red herring.  Plaintiff alleges that he complained about Defendant's employees' harassment on or about December 17, 2018 to his supervisor and the human resources department. (Compl. ¶ 8).  Plaintiff further alleges that "[a]s a result of [Plaintiff's] complaints to the Department about the sexual harassment/hostile work environment . . . . [Defendant's employees] retaliated against him by instigating and subjecting him to tangible adverse employment consequences such as fake/false file building including an ongoing internal investigation based on untrue allegations for wrongdoing and workplace misbehavior." (*Id.* ¶ 10).  While the Complaint's causation allegation is a legal conclusion, Plaintiff's Administrative Charge, which is incorporated into the Complaint by reference, alleges that the retaliatory human resources investigations began on January 31, 2009, just six weeks after filing his human resources complaint. (*Id.*).  Therefore, the Court finds a sufficiently alleged temporal nexus between the human resources complaint and Defendant's purported retaliation to plausibly indicate that lodging the complaint caused Defendant's retaliation.  The Court next addresses Plaintiff's intentional infliction of emotional distress claim.

ii.   <u>Intentional Infliction of Emotional Distress ("IIED")</u>

To state a claim for intentional infliction of emotional distress under Nevada law, a plaintiff must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Welder v. Univ. of S. Nev.*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (quoting *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999)).

1.   *Extreme and Outrageous Conduct*

Defendant argues that Plaintiff has not adequately alleged that he was subjected to extreme and outrageous conduct. (MTD 9:5–12). Plaintiff responds by asserting that the IIED is applicable in the employment context, but he does not explain how the allegations in the Complaint show extreme and outrageous conduct under Nevada law. (Pl.'s MTD 20:12–21:22).

"[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotations omitted). "Extreme and outrageous conduct also may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009) (internal quotations omitted). When considering whether a plaintiff has sufficiently stated a claim upon which relief can be granted, "[t]he court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury [must determine] whether the conduct was extreme and outrageous enough to result in liability." *Id.* at 1121. In the employment context, the Nevada Supreme Court has previously found that a jury does not commit clear error by permitting an employee to recover under an IIED theory when the alleged extreme and outrageous conduct comprised being

replaced and demoted after sustaining a workplace injury and in retaliation for making a worker's compensation claim. *See, e.g.*, *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 883–84, 886 (Nev. 1999) (en banc).

Here, Plaintiff alleges that he was subjected to sustained harassment including crude jokes and unwelcomed sexual reenactments. (Compl. ¶¶ 7–9). After complaining about his treatment to human resources, Plaintiff alleges that he was subjected to retaliatory internal investigations, placed on administrative leave, and excluded from workplace functions. (*Id.* ¶ 10). Given that the Nevada Supreme Court permits IIED recovery for retaliatory employment action, the Court cannot conclude that Plaintiff's allegations of discrimination and retaliation could not likewise constitute extreme and outrageous conduct to a jury. However, Plaintiff has not stated a claim to relief because the Complaint does not plausibly allege that Plaintiff suffered severe emotional distress.

## 2. *Severe Emotional Distress*

Defendant argues that Plaintiff has not adequately alleged that he suffered severe emotional distress because he has not alleged physical injury, illness, or other identifiable indicia of severe emotional distress. (MTD 9:21–10:2). Plaintiff responds that whether he suffered severe emotional distress is a question of fact, and he need not provide substantive evidence of severe emotional distress. (Pl.'s MTD Resp. 18:26–20:11).

To establish severe emotional distress, the plaintiff must demonstrate that "the stress [is] so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). In order to state a plausible claim to relief, the plaintiff must allege the physical symptoms he endured as a result of the emotional distress. *Baker v. Nevada*, No. 2-15-cv-1631-JAD-VCF, 2015 U.S. Dist. LEXIS 62959, 2015 WL 2233115, at *6 (D. Nev. May 12, 2015) (quoting *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) ("Baker must set forth 'objectively verifiable indicia' establishing that she

'actually suffered extreme or severe emotional distress.'").  Here, Plaintiff alleges that he "suffered and continues to suffer severer [sic] emotional, physical and mental distress[.]" (Compl. ¶ 11).  While Plaintiff is correct that whether he has suffered severe emotional distress is ultimately a question of fact, Plaintiff must allege facts demonstrating that he has sustained severe emotional distress to survive a motion to dismiss. *See, e.g.*, *Davis v. Nev. Dep't of Corr.*, 2:13-cv-1727-JAD-CWH, 2014 U.S. Dist. LEXIS 99444, at *8–*9 (D. Nev. July 21, 2014) ("the complaint is devoid of any reference to an emotional impact of the shooting.  With no emotional-distress facts from which this Court could draw the inference that Davis suffered severe or extreme emotional distress, this claim fails to state a plausible claim for relief and must be dismissed.").  As presently pleaded, the allegation is merely a legal conclusion. Accordingly, Plaintiff's conclusory allegations, which do not illustrate the nature of his emotional distress, do not rise to the level of plausibility, and the Court dismisses the claim without prejudice.

//

//

//

//

//

//

//

//

//

//

//

//

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 6), is **GRANTED in part** and **DENIED in part** consistent with the forgoing.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand, (ECF No. 11), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, (ECF No. 21), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection/Appeal, (ECF No. 25), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Supplement, (ECF No. 30), is **DENIED as moot**.

Dated this   2  day of February, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT